IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM T. JANDA, | ) | CASE NO. 1:12-CV-1250 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | REPORT & RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to local rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff William Janda's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be VACATED.

I. INTRODUCTION & PROCEDURAL HISTORY

On January 25, 2010, Plaintiff William Janda ("Plaintiff" or "Janda") applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits alleging he became disabled on March 24, 2009, due to suffering from bi-polar disorder, severe depression, a meniscal injury and a right disc herniation at L4-L5. (Tr. 182-95, 213).[1] Plaintiff's

---

[1] Janda previously applied for benefits under Titles II and XVI in December 2008. (Tr. 172-81). However, these applications were denied on March 24, 2009, (Tr. 82-95), without appeal.

applications were denied initially and upon reconsideration. (Tr. 95-107). Thereafter, Janda requested a hearing before an administrative law judge to contest the denial of his applications. (*See* Tr. 142-45). The Social Security Administration granted Plaintiff's request and scheduled a hearing. (Tr. 120-24).

On August 9, 2011, Administrative Law Judge Kendra Kleber (the "ALJ") convened a hearing to evaluate Plaintiff's applications. (Tr. 31-76). Plaintiff appeared at the hearing with counsel and testified before the ALJ. (*Id.*). A vocational expert, Gene Burkhammer (the "VE"), also appeared and testified at the proceeding. (*Id.*). On August 13, 2011, the ALJ issued an unfavorable decision finding Janda was not disabled. (Tr. 14-25). After applying the five-step sequential analysis,[2] the ALJ determined Janda retained the ability to perform work which

---

Accordingly, the administrative decision under review considered Janda's disabled status beginning March 25, 2009. (Tr. 14, n. 1).

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

    (1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

    (2)    If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

    (3)    If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

    (4)    If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

    (5)    Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her

2

existed in significant numbers in the national economy. (*Id.*). Subsequently, Janda requested review of the ALJ's decision from the Appeals Council, (Tr. 9-10), but the council denied the request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5). Plaintiff now seeks judicial review of the ALJ's decision. Review is proper pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. PERSONAL INFORMATION

Janda, born on August 2, 1961, (Tr. 77), was 48 years old on his alleged onset date. Accordingly, at that time he was considered as a "younger person" for Social Security purposes. *See* 20 C.F.R. §§ 416.963(c), 404.1563(c). However, on August 2, 2011, Plaintiff turned 50 years old and was then viewed by the administration as a "person closely approaching advanced age". *See* 20 C.F.R. §§ 416.963(d), 404.1563(d). Plaintiff earned his GED and has past experience working as a maintenance worker, semi-truck driver, heavy equipment operator, salvage worker and concrete supervisor. (Tr. 44, 54).

## III. VOCATIONAL EXPERT TESTIMONY

During the hearing, the ALJ posed two hypothetical questions to the VE. The first hypothetical described a person having the same age, education and past work experience as Janda. (Tr. 55). In addition, this person was limited to "light work",[3] and only possessed the

---

> residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

[3] The regulations define "light work" as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds". 20 C.F.R. §§ 404.1567(b), 416.967(b). It also usually requires "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

3

mental capacity to perform "routine, repetitive tasks with easily explainable changes" and "no more than occasional and superficial contact with the public." (*Id*.). The VE stated that such an individual would not be able to perform any of Janda's prior positions. (*Id.*). But, the VE testified that the person would be capable of performing work which existed in significant numbers in the national economy, namely that of a housekeeping cleaner, mail clerk or small products assembler. (Tr. 55-56).

Next, the ALJ asked the VE to consider whether there was work which an individual with slightly different abilities was capable of performing. This second hypothetical person also retained the same age, educational background and work experience as Janda, but the person was only capable of performing "sedentary work".[4] (Tr. 56-57). The ALJ also restricted this individual to "routine and repetitive tasks with easily explainable changes . . . . involving no more than occasional and superficial interaction with the public and also no quotas." (*Id*.). In response, the VE indicated that such a person would not be able to perform any of Janda's former jobs, but would be able to work as an addresser, charge account clerk or food and beverage order clerk. (Tr. 57).

During counsel's cross-examination of the VE, counsel inquired about the jobs the VE identified in response to these hypothetical questions. (Tr. 57-62). Counsel specifically questioned the VE regarding whether the job incidence figures he identified included part-time jobs. (Tr. 61). The VE acknowledged that his testimony was based upon government data, but

---

[4] Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). Additionally, "[a] certain amount of walking and standing is often necessary in carrying out job duties". *Id.*

explained that he was "not sure" whether the incidence figures provided included part-time jobs as well as full-time positions. (Tr. 57-62).

## IV. ALJ'S DECISION

The ALJ made the following relevant findings of fact and conclusions of law. At the first step of the five-step evaluation process, the ALJ found Janda had not engaged in substantial gainful activity since his alleged onset date of March 24, 2009. (Tr. 16). At step two, the ALJ ruled Plaintiff suffered from the following severe impairments: "herniated lumbar discs with some effacement of the thecal sac, mild degenerative joint disease of the knees with the right worse than the left, and bipolar disorder." (Tr. 17). However, at step three, the ALJ held that none of these impairments, individually or combined, met or equaled any of the impairments set forth in 20 C.F.R. Part 404, Subpart P., Appendix 1. (Tr. 17-19).

Before moving to the fourth stage of the analysis, the ALJ evaluated Janda's residual functional capacity ("RFC") to work. (Tr. 19-22). The ALJ concluded Janda retained the physical ability to perform a limited range of light work. (Tr. 19). Based on Janda's physical abilities, the ALJ limited him to jobs requiring no more than occasional stooping, kneeling, crouching, crawling, or climbing of stairs, ramps, ladders and scaffolds. (*Id.*). From a mental standpoint, the ALJ ruled Janda was restricted to "routine, repetitive tasks with easily explainable changes" and "no more than occasional interaction with the public." (*Id.*).

Based on this RFC, at step four, the ALJ held Janda was unable to return to any of his past relevant work. (Tr. 23). However, the ALJ deemed Plaintiff capable of performing other jobs existing in significant numbers in the national economy, such as a housekeeping cleaner, mail clerk or small products assembler. (Tr. 24). Accordingly, the ALJ ruled Plaintiff was not disabled.

V.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001)*; Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*.  Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence

in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VII. ANALYSIS

Plaintiff challenges the ALJ's decision on numerous grounds. Janda maintains that neither the ALJ's RFC assessment nor hypothetical questions posed to the VE properly accounted for his concentration deficits. Plaintiff also accuses the ALJ of ignoring the opinion of Dr. Karla Voyten who opined Plaintiff's work should not involve time or production pressure. Janda further contends that the ALJ's RFC failed to properly incorporate findings reached by Dr. Leigh Thomas, though the ALJ indicated that she gave the opinion great weight. Additionally, Plaintiff challenges the ALJ's finding that the record was void of evidence supporting a restriction on his ability to stand and walk. Finally, Plaintiff attacks the ALJ's reliance upon the testimony proffered by the VE because the VE could not verify whether his job incidence figures included part-time employment.

### A. Concentration, Persistence and Pace

At steps one through five of the sequential analysis, the claimant bears the burden of proving his impairments render him incapable of working. *See Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003)*. But, at step five, the burden shifts to the Commissioner to show that there are jobs existing in the national economy which can accommodate the claimant's RFC. *Id*. The Commissioner can satisfy this burden by showing "substantial evidence that a claimant has the vocational qualifications to perform specific jobs[.]" *O'Banner v. Sec'y of Health, Educ. & Welfare, 587 F.2d 321, 323 (6th Cir. 1978)*. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical'

7

question, but only 'if the question accurately portrays plaintiff's individual physical and mental impairments.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).

During the ALJ's evaluation of Plaintiff's impairments, she concluded he suffered from moderate limitations in his ability to maintain concentration, persistence and pace. The ALJ stated:

> The record illustrates Mr. Janda has moderate limitations in the ability to carry out detailed instructions, and the ability to maintain attention and concentration for extended period. [sic]. Further, Mr. Janda has a moderate limitation in his ability to complete a normal workday and workweek. This supports Mr. Janda has moderate difficulties with concentration, persistence or pace. However, during the consultative examination, Mr. Janda scored within the average range on items involving concentration, memory and immediate recall. Therefore, no more than a moderate limitation is warranted.

(Tr. 18) (internal citations omitted). In light of this limitation, the ALJ's RFC reflected that Plaintiff could only perform "routine, repetitive tasks with easily explainable changes" and "no more than occasional interaction with the public." (Tr. 19). Accordingly, the hypothetical questions the ALJ posed to the VE inquired whether a person having this mental capacity could work. The ALJ's ultimate ruling was based upon the VE's testimony in the affirmative. Plaintiff contends that the ALJ's formulation of his RFC did not accurately reflect his moderate limitation in concentration.

Janda's argument is well-taken. The Sixth Circuit's ruling in *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010), is instructive. In that case, both a state agency physician and the administrative law judge found Ealy to suffer from moderate limitations in concentration, persistence and pace. *Id.* The state agency physician specifically opined Ealy only retained the capacity to "sustain attention to complete simple repetitive tasks

8

for two-hour segments over an eight-hour day where speed was not critical". *Id*. Instead of providing this information in the hypothetical question posed to the vocational expert, the administrative law judge merely described Ealy's mental impairment as limiting him to "simple, repetitive tasks and instructions in non-public work settings." *Id*. The Sixth Circuit held that this stream-lined hypothetical erroneously omitted the speed and pace-based restrictions announced by the state agency physician and was inadequate to properly convey Ealy's limitations to the vocational expert. *Id*. at 516-17.

Likewise, courts in this circuit have generally held that an ALJ's hypothetical question or RFC must contain something more than a limitation to "simple, repetitive, routine work" in order to properly account for a claimant's moderate deficiency in concentration. *See, e.g. Candela v. Astrue*, No. 1:10-cv-1603, 2011 WL 3205726, at *10-12 (N.D.Ohio Feb. 5, 2010) (finding that a limitation to "low stress simple repetitive type tasks with no frequent interaction with coworkers or the general public" does not account for a moderate deficiency in concentration and persistence, i.e. "maintaining attention for long periods and being able to complete a normal work week"); *see also Ealy*, 594 F.3d at 516-17 (quoting *Edwards*, 383 F.Supp.2d at 930) ("Plaintiff may be unable to meet quotas, stay alert or work at a consistent pace, even at a simple, unskilled, routine job.").

In the instant case, neither the ALJ's RFC nor corresponding hypothetical questions, adequately conveyed Plaintiff's moderate concentration deficiency to the VE. The ALJ described Plaintiff's mental impairments as merely limiting him to routine, repetitive tasks. Yet, as noted above, this designation has routinely been found inadequate to convey a moderate limitation in concentration, persistence and pace. *See Candela*, 2011 WL 3205726, at *10-12; *see also Edwards*, 383 F.Supp.2d 930-31. Although the ALJ further noted that Janda's work

9

required "easily explainable changes" the undersigned is not convinced that this phrasing was sufficient to convey moderate concentration problems. Nor has the Commissioner shown how such wording was adequate to do so.

In addition, the Commissioner's reliance on *Howlett v. Commissioner*, No. 5:11-cv-902, 2012 WL 4506007 (N.D.Ohio Sept. 28, 2012) is unavailing as that case is distinguishable from the present case. In *Howlett*, the ALJ found the claimant had moderate limitations in concentration, persistence and pace, and incorporated such into his RFC and hypothetical questions by restricting Howlett to simple repetitive tasks which were low stress and had no high production quotas. *Id*. at \*2-6. The Court found this description was adequate to describe the claimant's concentration problems because no specific speed, pace or durational restrictions were placed on the claimant's abilities as in *Ealy*. *Id.* at \*6. By comparison, in the case *sub judice*, the ALJ did not even preclude Janda from work involving high production quotas or high stress. Restricting Plaintiff to jobs with "easily explainable changes" would not necessarily exclude jobs involving production quotas or stress.[5] Accordingly, *Howlett* does not support the ALJ's ruling and remand is necessary in order for the ALJ to cure the deficiencies in his RFC and hypothetical questions regarding Janda's mental impairments.

## B. Dr. Karla Voyten

Because the undersigned finds that remand is proper due to the deficiencies in the ALJ's RFC and corresponding hypothetical questions, it is not necessary for the Court to entertain

---

[5] The undersigned notes that the ALJ's second hypothetical question indicated that Janda's work should not include any quotas. (*See* Tr. 56-57). However, the ALJ's inclusion of this limitation is irrelevant because the ALJ's decision was not based upon the VE's testimony in response to this question. Nor did the hypothetical restrict Plaintiff to low stress jobs.

Plaintiff's remaining objections. Nevertheless for the sake of completeness, the Court will briefly address each of these arguments.

In February 2011, Dr. Karla Voyten, a state agency psychologist, completed two forms evaluating Janda's mental health. (Tr. 639-52, 653-55). Dr. Voyten opined, *inter alia*, that Janda suffered from moderate impairments in social functioning, activities of daily living, and maintaining concentration, persistence or pace. (Tr. 649). She also indicated Plaintiff suffered from a moderate to marked impairment in coping with stress. (Tr. 655). Ultimately, she concluded Janda was capable of performing no more than "simple and moderately complex tasks in environments without time or production pressure where social interaction is superficial." (*Id*.).

The ALJ's assessment of Plaintiff's mental impairments, namely her finding that Plaintiff had moderate limitations in concentration, persistence and pace, was largely based upon Dr. Voyten's findings. The ALJ explicitly discredited Dr. Voyten's belief that Plaintiff suffered from a moderate deficit in activities of daily living, however, she indicated that she gave "some weight" to the doctor's other findings. Plaintiff challenges the ALJ's failure to incorporate the time and production pressure restriction noted by Dr. Voyten into her RFC assessment or hypothetical questions.

This argument has merit. Given the ALJ's reliance on Dr. Voyten's opinion to find Janda suffered from moderate limitations in concentration, persistence and pace, it is curious as to why the ALJ would reject this portion of the doctor's opinion without explanation. Dr. Voyten's indication that Janda required positions without time and production pressure appears to be akin to jobs that are low stress and without production quotas. While an ALJ is not required to mention every piece of evidence in the record, *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x

11

496, 507-08 (6th Cir. 2006), she must build a logical bridge between the evidence of record and her decision. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). Without some explanation from the ALJ, the undersigned cannot decipher why the ALJ would accept Dr. Voyten's opinion that Plaintiff suffered from a moderate limitation in concentration, persistence and pace, but omit the doctor's recommendation to preclude Plaintiff from performing work having time or production pressure. As a result, the ALJ should re-examine this issue on remand.

### C. Dr. Leigh Thomas

In April 2011, Dr. Leigh Thomas, a state agency physician, completed a Physical Residual Functional Capacity Assessment of Plaintiff. (Tr. 667-74). Amongst his findings, Dr. Thomas indicated that Plaintiff was limited in his ability to reach in all directions. (Tr. 670). The doctor further commented that Janda could only perform occasional overhead reaching with his left arm due to his limited range of motion in that extremity. (*Id.*). The ALJ credited Dr. Thomas' findings regarding Plaintiff's physical abilities and afforded his opinion great weight. But, despite this finding the ALJ's RFC did not place any restrictions on Plaintiff's ability to perform overhead reaching.

The ALJ's failure to include this limitation alone does not constitute reversible error as there is no requirement that an ALJ adopt every finding contained within an opinion, even when the opinion is given great weight. *Sonnenlitter v. Comm'r of Soc. Sec.*, No. 1:12-cv-0043, 2012 WL 4794639, at *15 (N.D.Ohio Oct. 9, 2012). However, it would have been helpful for the ALJ to explain why she did not accept this portion of Dr. Thomas' opinion. The ALJ ruled that the doctor's findings were consistent with Janda's medical records and with the opinions of the other

12

doctors of record. Thus, there is no apparent reason why such a limitation would be omitted by the ALJ.

In light of the current posture of this case, on remand the ALJ should re-evaluate Dr. Thomas' findings and their impact upon her RFC assessment. It is possible that the inclusion of this restriction could have affected the VE's responses to the ALJ's hypothetical questions. While the Dictionary of Occupational Titles ("DOT") does not explicitly state that any of the jobs identified by the VE involve overhead reaching, the DOT does indicate that each position requires reaching in general. *See* DICOT 323.687-014, 209.687-026, 739.687-030. Notably, the DOT indicates that the positions of a housekeeper and cleaner require "frequent" reaching, and that the position of an assembler requires "constant" reaching. DICOT 323.687-014, 209.687-026, 739.687-030.

### D. Standing, Sitting and Walking

Plaintiff's objection to the ALJ's determination of his ability to sit, stand and walk is not well-taken. The ALJ concluded Janda retained the ability to sit, stand and walk for six of eight hours each day. Plaintiff challenges this finding because two physicians of record—physicians whose opinions the ALJ assigned little or no weight— indicated he was not equipped to sit, stand or walk uninterrupted for this length of time. But, the existence of this evidence does not require reversal of the ALJ's ruling. An ALJ's ruling must stand so long as it is supported by substantial evidence even though substantial evidence may support a contrary conclusion also. *Mullen, supra*, 800 F.2d at 545. In the instant case, the ALJ's evaluation of Plaintiff's ability to sit, stand and walk are supported by the findings of Dr. Thomas. Therefore, substantial evidence supports this portion of the ALJ's decision and the undersigned declines to disturb it.

E. Part-time v. Full-time Positions

Plaintiff's final assignment of error contends the VE's testimony regarding the number of jobs available to him did not constitute as substantial evidence to support the ALJ's step five finding because the VE could not verify whether the job incidence figures he cited included part-time jobs. Plaintiff claims that only full-time jobs are relevant at step five of the sequential analysis.

Plaintiff's argument is based upon a misinterpretation of Social Security Ruling 96-8p. The ruling states that an ALJ must make its RFC determination based upon full-time work, i.e. "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2 (1996). Prior to the enactment of Social Security Ruling 96-8p, the Sixth Circuit regarded part-time work as "substantial work activity", thus permitting an ALJ to conclude that a claimant was capable of working even if the claimant's RFC only permitted him to work part-time. *See Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995); *see also Davis v. Sec'y of Health & Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1990). But, Social Security Ruling 96-8p changed this line of thinking and required the ALJ's RFC to be based on the claimant's ability to perform full-time work. *See DeRossett v. Astrue*, No. 7:09-cv-00046, 2009 WL 4169489, at *5 (E.D.Ky. Nov. 20, 2009). Thus, "SSR 96-8p[] is only relevant to step five of the sequential process because it relates to the ALJ's determination of RFC which is used to determine whether an individual is capable of performing other work in the event that he is unable to perform past relevant work or [where the claimant] has no past relevant work." *Id*.

The undersigned is not persuaded to rule differently based upon the case law cited by Janda. In *DeRossett*, the court found that the plaintiff had failed to cite a law or regulation "standing for the proposition that an ALJ's [sic] must ask whether the VE whether [sic] his

14

testimony was referring to part-time or full-time work." *Id*. Moreover, the court noted that DeRossett had not challenged the ALJ's RFC determination or shown that the RFC was based on the plaintiff's ability to perform only part-time work. *Id*. In *Kane v. Astrue*, No. 1:10-cv-1874, 2011 WL 3353866, at *4-5 (N.D.Ohio Aug. 3, 2011), this Court vacated the ALJ's decision, however, the court explained that unlike in *DeRossett*, there was "at least some evidence that [Kane] would have difficulty completing a normal workday and workweek." *Id*. at *5. Therefore, the court concluded it was necessary for the ALJ to determine whether Kane retained the capacity for full-time work. Finally, the ruling in *Welch v. Astrue*, No. 1:10-cv-1434, 2011 WL 4632922, at *6 (N.D.Ohio Sept. 30, 2011), reversing the adjudicator's decision, appears to be based, at least in part, on a misreading of the court's reasoning in *Kane*.

The undersigned declines to find that it was *per se* error for the ALJ to accept the VE's testimony despite his inability to definitively state whether his job incidence figures included part-time employment. Plaintiff has not successfully identified any rule or regulation to the contrary. Neither has Plaintiff shown that the ALJ's RFC was improperly based on his ability to perform part-time jobs only. On remand, it will be Janda's burden to show that he is unable to sustain full-time employment.

## VIII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner be **VACATED** and the case be **REMANDED** for further proceedings.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: June 7, 2013.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).