**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| WILLIAM T. JANDA, SR., | ) | CASE NO. 1:12CV1250 | |
| | ) | | |
| | ) | | |
| PLAINTIFF, | ) | JUDGE SARA LIOI | |
| | ) | | |
| vs. | ) | | |
| | ) | | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION** | |
| SECURITY, | ) | **AND ORDER** | |
| | ) | | |
| DEFENDANT. | ) | | |
| | ) | | |

Before the Court is the motion of plaintiff William T. Janda, Sr. ("Janda" or "plaintiff") for an award of attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"). (Doc. No. 22.) The Commissioner of Social Security ("Commissioner" or "defendant") has filed a brief in opposition (Doc. No. 23) and plaintiff filed a reply (Doc. No. 24). This matter is fully briefed and ripe for determination.

## I. BACKGROUND

Janda filed the instant action on May 17, 2012, seeking review of the Commissioner's denial of his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. No. 1.) On June 24, 2013, the Court adopted the expressly unopposed[1] Report and Recommendation of the magistrate judge, concluding that the Commissioner's decision was not supported by substantial evidence, that the decision should be

---

[1] *See* Doc. No. 19.

vacated, and that the case should be remanded, under sentence four of 42 U.S.C. § 405(g), for further proceedings. (Doc. Nos. 18, 20.)

Janda now moves for attorney fees in the amount of $4,861.38, representing 25.2 hours of service provided by Attorney Kirk B. Roose[2] and 4.3 hours of service provided by Mr. Roose's appellate assistant, Diane J. Shriver.  Plaintiff is requesting a $184.38 hourly rate for his Mr. Roose's services and a $50.00 hourly rate for Ms. Shriver's services.

The Commissioner opposes the request, challenging the reasonableness of the hourly rate sought for Attorney Roose and the entire amount sought for services performed by Ms. Shriver. The Commissioner expressly offers no challenge as to the timeliness of the fee application, plaintiff's prevailing party status, the issue of substantial justification for the Commissioner's position before the agency and this Court,[3] or the number of hours claimed by Attorney Roose.

## II. DISCUSSION

### A.     Fees for Attorney Roose

The EAJA provides that the amount of any attorney fee awarded "shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justify a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii).

---

[2] In his reply brief, Janda increases his original request of $3,478.53 to account for an additional 7.5 hours of attorney services devoted to the reply brief.

[3] The EAJA requires the government to pay a prevailing social security plaintiff's attorney's fees and costs "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Howard v. Barnhart*, 376 F.3d 551, 553 (6th Cir. 2004).

"In requesting an increase in the hourly-fee rate, Plaintiffs bear the burden of producing appropriate evidence to support the requested increase." *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009).

Here, plaintiff requests an hourly rate of $184.38 for his attorney's services, based upon several factors.

1.      **Arguments Regarding an Increased Hourly Rate for Attorney Services**

   a.      *Increased Cost of Living*

Plaintiff argues that there has been a 1.475% increase in the cost of living from 1996 (when the EAJA cap of $125 was set) until 2012 (the time during which most of counsel's work was performed), as reflected in the Consumer Price Index ("CPI") for all urban consumers. (*See* Application, Ex. 3.) He asserts, without any citation to supportive case law, that "Congress' action in raising the base figure from $75 to $125 per hour in 1996 demonstrates congressional intent that the hourly-rate fee cap be increased with inflation so that the effect of EAJA will not diminish over time." (*Id*. at 873.)

The Commissioner argues in opposition that the EAJA expressly limits fees to $125 per hour and does not mandate or provide for automatic changes to reflect changes in the cost of living. The Commissioner cites *Chipman v. Sec'y of HHS*, 781 F.2d 545, 547 (6th Cir. 1986), for the proposition that the "statutory rate is a ceiling and not a floor."[4] In *Chipman*, the court concluded that it was not an abuse of discretion for a court to decline to grant an increase due to an increase in the cost of living. In support, the court noted that, in 1985 when Congress reenacted the EAJA, it did not increase the $75 statutory cap. The Commissioner also argues that

---

[4] The Commissioner also cites *Mathews-Sheets v. Astrue*, 653 F.3d 560 (7th Cir. 2011), which relied upon *Bryant*, *supra*, to hold that, even though the district court has discretion to increase the hourly rate based upon inflation, an attorney "still must show that it [inflation] actually justifies a higher fee . . . [and] that inflation has increased the cost of providing adequate legal service to a person seeking relief against the government." *Id*. at 563.

3

plaintiff cannot justify a higher rate when other attorneys who practice in this field in Cleveland have routinely requested EAJA fees based on the statutory cap of $125.

In reply, Janda argues that the rationale underlying *Chipman* was legislatively overruled in 1996, when Congress increased the statutory cap from $75 to $125. He further argues that several judges in the Northern District of Ohio, including the undersigned, have rejected any assertion that the hourly rate should not be increased to recognize an increased cost of living. (*See* Reply at 954, citing cases.) Finally, Janda rejects any suggestion by the Commissioner that because other attorneys request only the statutory cap, he must be satisfied with the same. He argues that "[t]he statute requires a 'prevailing rate,' not the lowest bid." (Reply at 957.)

> b.     *Hourly Attorney Rates in Cleveland*

Plaintiff also argues that, since the standard is "prevailing market rate," the typical hourly rates charged by attorneys in Cleveland, including his own attorney, are relevant. Janda supplies the affidavits of Attorney Roose and three other attorneys in support of his argument that the prevailing rate is higher than $125. He also relies upon an Ohio State Bar Association survey profiling attorney hourly billing rates in Ohio during 2010, and a Law Office Economics survey released in July 2011, but based on 2010 data, profiling economic statistics and financial data available about the legal profession. (Application, Exs. 8, 9.) He cites several cases in the Northern District of Ohio where the rates of other attorneys were accepted as evidence of the need to increase the hourly rate. (Application at 865-66, citing cases.) Janda also notes that the Commissioner has settled claims with other Social Security litigants, agreeing to hourly rates in excess of $125.

The Commissioner rejects any reference to the rates of other attorneys and argues that the statutory rate is sufficient, even in this locale, as evidenced by the fact that some attorneys routinely request only the statutory rate. The Commissioner cites cases from this district where judges have concluded that an applicant has not met his or her burden of justifying an increase. (Opposition at 924, citing cases.) The Commissioner also rejects any reference to the two surveys submitted by plaintiff as proof of "prevailing market rates" because they both are broad surveys reporting average rates of attorneys who not only do not practice Social Security law, but also do not practice law in the Cleveland area. As for the rates charged by plaintiff's counsel and other attorneys, as reflected in the affidavits accompanying the application, the Commissioner asserts that these are rates based on contingency fee arrangements, which cannot be used to enhance the statutory cap. (*Id*. at 925, citing *City of Burlington v. Dague*, 505 U.S. 557, 567, 112 S. Ct. 2638, 120 L.Ed. 2d 449 (1992) (holding that "enhancement for contingency is not permitted under the fee-shifting statutes at issue"[5]).) Finally, the Commissioner argues that, if the rate is to be increased based on the CPI, the Court should measure the cost of living increase based on the "Midwest Urban" average, rather than the "U.S. City Average—All Items" used by plaintiff.

In reply, plaintiff argues that a clear majority of the judges in this district have rejected using the 1996 statutory rate (Reply at 954, citing cases), and, in addition, some have rejected the argument about other attorneys seeking only the statutory rate (*Id*. at 957, citing

---

[5] The "statutes at issue" in *City of Burlington* were the Solid Waste Disposal Act and the Federal Water Pollution Control Act. The Court adopted the position set forth in Justice White's opinion in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S. Ct. 3078, 97 L.Ed. 2d 585 (1987), a case based on fee-shifting provisions in the Clean Air Act. Without more explanation by the Commissioner, this Court highly doubts the applicability of either of these cases in a Social Security context.

cases). Plaintiff rejects the application of *Chipman* and argues that *Mathews-Sheets* is not controlling precedent.

>    2.    **Conclusion as to the Hourly Rate for Attorney Roose**

Having considered all of the arguments, the Court concludes that the change in the cost of living over the years justifies an increase of the statutory rate of $125. The Court also credits the affidavits of Mr. Roose and the three other attorneys, attached to plaintiff's application, as evidence of "prevailing rates" in the Cleveland area.[6]

The Court agrees with the Commissioner and with other judges of the Northern District of Ohio that the appropriate measure of inflation should be the "Midwest Urban" CPI rather than the "U.S. City Average." *See*, *Gunther v. Comm'r of Soc. Sec.*, 943 F. Supp. 2d 797, 803-04 (N.D. Ohio 2013) (the Midwest Urban CPI "is reasonable and perhaps most accurate as it represents the cost of living increase on a local basis[]") (citing *Mohr v. Comm'r of Soc. Sec.*, No. 3:11CV2731, 2013 WL 557176 (N.D. Ohio Feb. 12, 2013); *Vasquez v. Astrue*, No. 3:11-cv-0177, 2012 WL 3637676 (N.D. Ohio Aug. 22, 2012); *Jaworski v. Astrue*, No. 1:10-cv-02936, 2012 WL 3552634 (N.D. Ohio Aug. 16, 2012); *Killings v. Comm'r of Soc. Sec.*, No. 1:09CV845, 2009 WL 3614956 (N.D. Ohio Oct. 28, 2009)).

That said, the Court is not in agreement with the calculation suggested by the Commissioner.[7] Using the CPI-U for the Midwest region[8] and selecting the value for the second

---

[6] Under different circumstances, the Court would be concerned that three of the affidavits presented are a year and a half old and the fourth is a little more than a year old. However, since the relevant time period for purposes of this application is 2012, affidavits executed between July and November of 2012 are appropriate for evidentiary purposes.

[7] The Commissioner suggests using the CPI-U for the Midwest region, but then identifies $218.15 as the "value for the first half of 2012." (Opposition at 925, n.3.) Using that value and the 1996 March CPI-U of 151.7, the Commissioner calculates the hourly rate as follows: ($218.15 ÷ 151.7) x $125.00 = $179.95. Aside from the fact that the computation would yield a result of $179.75 (not $179.95), the Court cannot ascertain where the Commissioner got the value of $218.15, as it is not on the CPI chart that the Commissioner referenced.

half of 2012 (the time during which virtually all of the work in this case occurred), that is, 219.906, and dividing by the value for March 1996 (when the EAJA's statutory cap was set), that is, 151.7, the Court calculates the cost of living increase to be 1.45 (i.e., 219.906 ÷ 151.7 = 1.449611). Multiplying $125 by that increase, the appropriate hourly rate would be $181.25 (i.e., $125 x 1.45).

Next, the Court turns to the hours claimed by Attorney Roose. (*See* Application, Ex. 1.) Although the Commissioner is not challenging the number of attorney hours claimed, the Court has a duty to do so independently to assure that there is no entry that is excessive, redundant or unnecessary. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (applying Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988).

Plaintiff's brief on the merits (Doc. No. 14) was filed on October 15, 2012 and consisted of twelve (12) pages, ten (10) of which contained substance. The time sheets submitted by Attorney Roose itemize 6.5 hours of service performed *on* October 15, 2012 described as: "Research and edit Plaintiff's brief; efile same." (Application, Ex. 1 at 870.) Further, the time sheet submitted by Ms. Shriver (addressed more specifically below) contains an entry on October 9, 2012 for 2.5 hours described as: "Prepare outline and some language for Plaintiff's brief." (*Id.*, Ex. 2 at 872.)[9] Therefore, a total of 9.0 hours was spent preparing plaintiff's brief. The brief was compactly written and contained very little boilerplate and a significant amount of case specific material.[10] The Court concludes that the time spent for this brief was appropriate.

---

[8] This can be found on the website of the Bureau of Labor Statistics (http://www.bls.gov).

[9] It is interesting that Mr. Roose waited until the very day the brief was due to work on it, especially given that the date was an extended deadline that would not be further extended. Perhaps the Court can safely reach a two-fold conclusion from this fact: (1) that the attorney's experience in this area of the law makes the work somewhat routine for him, and (2) that the work performed by his assistant was quite substantive.

[10] This was in compliance with specific directives in the Magistrate Judge's Initial Order. (Doc. No. 8.)

Two other entries on Attorney Roose's time sheet cause the Court concern: (1) an entry for 2.0 hours on December 11, 2012 described as "Research and begin preparation of Reply Brief" and (2) an entry for 5.8 hours on December 12, 2012 described as "Continue research of caselaw and complete Reply brief; efile same." (Application, Ex. 1 at 870.)

Plaintiff's reply brief was filed on December 12, 2012 and was six (6) pages in length, with only five (5) pages of substance. However, the arguments contain very little *legal* substance (of a type that would require independent research); the brief is mostly repetitious of plaintiff's original arguments and factual statements based on the transcript as a means of refuting the arguments in the Commissioner's brief. The Court concludes that an experienced attorney such as Mr. Roose would not require 7.8 hours to complete this short reply brief.[11] Therefore, the Court will cut this amount in half, reducing these two entries to a total of 3.9 hours.

Finally, in his reply brief related to the instant fee application, Janda asks this Court to add an additional 7.5 hours to the original 17.7 hours claimed by his attorney, to account for research on the reply brief itself. The reply brief is barely eight (8) pages. Although it contains many string citations to cases decided by judges of the Northern District of Ohio, the Court suspects that these were not cases that were newly-discovered by Mr. Roose. In several of the cases, he was the attorney of record. The Court concludes that 7.5 hours for this reply brief is excessive and will reduce that amount to 4.0 hours.

In sum, the Court reduces the original 17.7 hours by 3.9 hours, and further reduces the 7.5 hours claimed for the final reply brief to 4.0 hours, for a total of 17.8 hours

---

[11] Again the Court notes that Mr. Roose waited until the "last minute" to work on this brief.

(rather than the 25.2 hours requested). At the hourly rate of $181.25, this amounts to an award of $3,226.25 for the services of Attorney Roose.

**B.      Fees for Services Performed by Appellate Assistant Shriver**

Plaintiff further seeks to recover fees for services performed by his counsel's appellate assistant.

The Commissioner opposes these fees because Ms. Shriver's services as a legal secretary are part of the firm's overhead and are not compensable.

Plaintiff argues in reply that hours claimed for Ms. Shriver's services all relate to "legal" work that would otherwise have been performed by an attorney. Janda refers to these services as "paralegal" services.[12] He states that all purely clerical hours have been removed from Ms. Shriver's time sheets.

The Court finds support in the case law of the Northern District of Ohio for awarding fees for services of the kind performed by Ms. Shriver. *See, e.g.*, *Draper v. Comm'r of Soc. Sec.*, No. 3:11CV2287, 2013 WL 5878935, at * 5 (N.D. Ohio Mar. 15, 2013). Having examined the list of services performed and the hours claimed (Application, Ex. 2), the Court finds them reasonable. Accordingly, an additional amount of $215.00 (4.3 hours x $50/hr) shall be awarded.

---

[12] There is nothing in the resume of Ms. Shriver to suggest that she is a paralegal. (*See*, Application, Ex. 12.) Her relevant education is listed as "Legal Secretary Program" at Bryant & Stratton Business Institute.

9

## III. CONCLUSION

For the reasons set forth herein, plaintiff's application for EAJA attorney fees is granted in part. The Court will award a total of $3,441.25 for the services performed, representing $3,226.25 for Mr. Roose's services and $215 for Ms. Shriver's services. This amount shall be paid to the plaintiff.[13]

**IT IS SO ORDERED**.

Dated: February 25, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[13] The application represents that counsel consents to the payment being made to plaintiff, despite plaintiff's assignment of the fees to counsel (*See* Application, Ex. 14), "because of the unlikely possibility that plaintiff owes a federally-collectible debt." (Application at 868.) *See, Astrue v. Ratliff*, 560 U.S. 586, 130 S. Ct. 2521, 177 L.Ed. 2d 91 (2010) (holding that EAJA fees are payable to the plaintiff and are subject to setoff if the plaintiff has outstanding federal debts and recognizing that the payment could be made directly to a plaintiff's attorney only in cases where the plaintiff both owes no debt to the government and had assigned any right to EAJA fees to the attorney).